**UNITED STATES v. MARPES (two cases).**

Nos. 10691, 10692.

United States Court of Appeals
Third Circuit.

Argued May 19, 1952.

Decided July 7, 1952.

Rehearing Denied Aug. 8, 1952.

Writ of Certiorari Denied Nov. 10, 1952.
See 73 S.Ct. 170.

expired by its own terms, as last amended, on June 30, 1947.

Gilbert E. Morcroft, Pittsburgh, Pa., for appellant.

Philip O. Carr, Pittsburgh, Pa. (Edward C. Boyle, U. S. Atty., Irwin A. Swiss, Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from judgments of conviction under two indictments and the sentences imposed thereon.

Defendant James Marpes and others were convicted under Indictment No. 13295 of having received and being in possession of certain merchandise stolen from an interstate truck shipment, and, under Indictment No. 13296, of stealing from the same shipment certain articles of wearing apparel of the value of $38,768.80, in violation of 18 U.S.C. § 659.[1] Defendant contends that the government failed to prove by substantial credible evidence (1) his connection with the crimes, (2) the interstate character of the shipment and (3) the value of the goods stolen. The objection as to value is directed to the jury's verdicts and the sentences imposed.

We are of the opinion that the evidence adduced by the prosecution was adequate, and that the convictions and sentences should stand.

1. "Whoever embezzles, steals, or unlawfully takes * * * from any railroad car, wagon, motortruck, or other vehicle, * * * with intent to convert to his own use any goods or chattels moving as or which are a part of * * * an interstate or foreign shipment of freight or express; or

"Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen * * *.

"Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; but if the amount or value of such * * * goods or chattels does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

The goods involved in this case were part of a shipment of women's clothing which was en route from New York to certain department stores in Pittsburgh, Pennsylvania, and nearby points. The goods had been transported in a trailer owned by Helm's New York Pittsburgh Motor Express. When the trailer reached its Pittsburgh terminal, some 168 cartons were loaded onto one of Helm's local trucks for delivery to Joseph Horne Company, one of the consignees. Shortly thereafter, this truck was stolen from in front of a restaurant while the driver was inside having a cup of coffee. The abandoned truck and part of the load were found later the same day. Two days later about 100 cartons marked with Joseph Horne Company's name were found in a garage on Western Avenue in Pittsburgh.

Defendant's connection with the crime was established by Vincent Empiri, an accomplice. He testified that he and the defendant, together with one DiPippa, were riding in the latter's car when they saw the unattended Helm's truck; that he drove the truck away, the others preceding him in the car; that they unloaded about half the packages in the Western Avenue garage and then abandoned the truck and the remaining packages.[2] Defendant did not take the stand, but offered the testimony of three local law officers to establish that he was in the Allegheny County Courthouse at the time of the events described by Empiri.

■■■ Defendant concedes that a conviction can be sustained upon the uncorroborated testimony of an accomplice, but contends that the overwhelming weight of the testimony of three disinterested witnesses should so discredit Empiri's testimony that no conviction should be allowed to rest thereon. We cannot agree. Whatever the explanation for the apparent conflict in testimony, the credibility of the witnesses was for the jury. Defendant did not complain of the instructions under which the issue was submitted. He cannot now be heard to say that the jury should have believed some witnesses and disbelieved others. United States v. Dewinsky, D.C.

N.J.1941, 41 F.Supp. 149, 154. Opinion by Goodrich, Circuit Judge, sitting by assignment. Furthermore, Empiri's testimony was corroborated by that of other prosecution witnesses, who testified to having seen the defendant and DiPippa in the vicinity of the Western Avenue garage on the day of the crime.

Defendant also contends that the government failed to prove one of the elements of the crime, viz.—the interstate character of the shipment. The statute provides:

"To establish the interstate or foreign commerce character of any shipment in any prosecution under this section the waybill or other shipping document of such shipment shall be prima facie evidence of the place from which and to which such shipment was made."

In this case, however the government attempted to actually trace the shipment by producing the testimony of everyone who handled it from its point of origin in New York until the theft in Pittsburgh. It is defendant's position that the prosecution could have introduced the pertinent shipping documents and rested on the presumption created by the statute, but that, having attempted to establish the interstate nature of the goods by positive testimony, the government itself rebutted the statutory presumption. In support of this contention, defendant points to the testimony of Sherman, the Helm's driver who drove from New York to Harrisburg, where another driver took over. Sherman was asked by government counsel whether he picked up the trailer in question at Helm's New York terminal, to which he replied: "Yes, I did. I didn't pick up no freight. I just picked up a trailer." Defendant contends that this answer meant that Sherman picked up only an empty trailer, and that therefore the jury had no basis for a finding that the goods were moving in interstate commerce.

■■ The answer to this contention is twofold. First, there was ample evidence to bolster the statutory presumption. The government proved specifically that the goods were loaded in New York and the

2. There was testimony that some of the goods were later sold, but this was ruled inadmissible against this defendant.

trailer sealed; and further, that the seal was intact when the trailer arrived in Pittsburgh. This alone would have been adequate. Cf. United States v. Cordo, 2 Cir., 1951, 186 F.2d 144, 146. Second, the jury's verdict resolved any possible ambiguity in Sherman's testimony. In the Federal courts, evidence offered to rebut a presumption must be credited by the jury to be effective. Tot v. United States, 1943, 319 U.S. 463, 470, 63 S.Ct. 1241, 87 L.Ed. 1519.

Defendant's remaining contention is that the government failed to prove the value of the stolen goods. This contention has two aspects; defendant maintains that the sentences were illegal, since it was not proven that the goods were worth more than $100,[3] and, moreover, the guilty verdicts themselves should not be allowed to stand, since it was not shown that the goods had *any* value. We do not agree with either proposition.

While the government did not attempt to fix in dollars and cents the total value of the stolen goods, the evidence was clear that they were worth far in excess of $100. The shipping documents showed that the entire shipment consisted of approximately 400 cartons with a total weight of 9043 pounds. These goods were carried by Helm's at a "released value" of $0.50 per pound, which meant that the carrier's liability alone exceeded $4500. The testimony showed that almost one-half of the shipment was stolen. Moreover, the freight charges alone on the goods consigned to Joseph Horne Company exceeded $100.

The jury returned a general verdict of guilty on both indictments, indicating that the defendant was " 'guilty in manner and form as charged * * *.' " Chesavior v. United States, 1929, 59 App.D.C. 49, 32 F.2d 945, 946. The sentence of one year's imprisonment imposed under Indictment No. 13295 was necessarily based upon a value of $100 or less, since the indictment did not allege value. The sentence of three years' imprisonment imposed under Indict-

ment No. 13296 was amply supported by the evidence above discussed.

For the reasons stated the judgments of conviction and the sentences imposed thereon by the District Court will be affirmed.

---

3. The maximum penalty under the statute, where the goods are of a value of $100 or less, is $1000 fine or a year's imprisonment, or both; upwards of a value of $100, the maximum penalty is $5000 fine or ten years imprisonment, or both. See footnote 1, supra.