Commonwealth *v.* Jennings, Appellant.

Submitted March 28, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Kenneth Mirsky* and *John W. Packel*, Assistant Defenders, and *Vincent J. Ziccardi*, Defender, for appellant.

*David Richman, Douglas B. Richardson, Mark Sendrow*, and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., April 22, 1975:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, Criminal Division, by the appellant-defendant, Parnell Jennings, after conviction by a jury of aggravated robbery and burglary; and from the denial of post-trial motions.

The incident out of which these charges arose occurred on February 1, 1972, in a Philadelphia taproom. The Commonwealth presented testimony indicating that the defendant entered the taproom, placed a gun at the side of the owner's neck and ordered him to turn over the money in the cash register. The bartender, with the help of several patrons of the establishment, succeeded in thwarting the robbery and in the ensuing fracas Jennings was wounded. The defendant took the stand on his own behalf and testified that he never tried to rob the owner and that his wounds were inflicted by the bar's owner and patrons in a racial assault after he was informed that "niggers" were not served in the bar. One of the Commonwealth's witnesses at trial was a black patron of the establishment and the tavern owner testified that he regularly served blacks.

Jennings raises several reasons for error on this appeal only one of which presents a substantial issue. The defendant claims that the trial judge's questions directed to him while on the witness stand constituted a denial of his Fifth Amendment right to remain silent. After he testified that he was a victim of a brutal racial attack and not a robber the defendant was asked by the trial judge whether he had informed the police or the district attorney of the attack upon him, to which the defendant gave a negative answer. The trial court also asked the defendant whether he said anything about the alleged attack upon him at the preliminary hearing. Defense counsel objected to each of these questions but was overruled by the Court. The defendant claims that these questions violated his right to remain silent during police questioning.

An accused does have the absolute right to remain silent in the face of police questioning, at a preliminary hearing, and at trial and no adverse inference may be drawn from the exercising of that right. *Commonwealth v. Haideman,* 449 Pa. 367, 296 A. 2d 765 (1972). However, contrary to defendant's contention, the questions asked of him by the court, did not amount to an adverse comment on his failure to testify nor were they an implication that his failure to complain to the police, to the district attorney, or to state this at the preliminary hearing constituted a tacit admission of guilt. The reference to the defendant's silence had nothing to do with his decision to exercise his right against self-incrimination by remaining silent in the face of police questioning with respect to the robbery but to his failure to speak to the proper authorities about facts which, if true, would have absolved him of all guilt and would have constituted a serious crime on the part of his alleged attackers. The defendant voluntarily took the witness stand and offered testimony which, if believed, absolved him from the charges on the ground that he was the real victim. As

such, we do not see how the trial court's questions, directed towards his past conduct, constituted a violation of his right against self-incrimination since a defendant's silence in the face of police suspicion can be used at trial to impeach him after he had voluntarily taken the stand and offered testimony which was contradictory to his earlier silence. *United States ex rel. Burt v. New Jersey*, 475 F. 2d 234 (3d Cir. 1973). By questioning the defendant in the manner done here the court was not commenting on the exercise of his Fifth Amendment rights but was inquiring why he did not behave in a manner consistent with his testimony. Therefore, no violation of his right to remain silent occurred.

Judgment of sentence is affirmed.

HOFFMAN, J., concurs in the result.

———

DISSENTING OPINION BY PRICE, J.:

I must dissent from the majority opinion. The trial judge questioned appellant, over objection by counsel, on his failure to file a complaint as to certain matters raised by appellant in his defense. I believe this line of questioning violated appellant's Fifth Amendment right to remain silent.

Appellant contended by way of defense, that he was not involved in a robbery of the tavern, but was in fact an innocent victim of a vicious attack perpetrated upon him by several of the patrons of the bar. However, he did not file a complaint against his alleged attackers, did not notify the police or the District Attorney, did not discuss the attack at the preliminary hearing, and actually mentioned this point for the first time at the trial. The trial judge raised this issue by direct questioning as follows:

"BY THE COURT:

Q. Mr. Jennings, from the time the police came and took you to the hospital—

A. Yes, sir.

Q. —you were at Einstein Medical Center, Southern Division; is that right?

A. Yes, sir.

Q. And you stayed there how many days?

A. I am really not sure. It must have been about two, three or four days.

Q. And then took you to where?

A. Philadelphia General.

Q. For further treatment; is that correct?

A. Yes, sir. They said I had to have a specialist.

Q. And then subsequently, on February 29th, 1972, there was a preliminary hearing held before the Honorable Benjamin SEGAL?

A. Yes, sir.

MR. HARRIS [Defense counsel]: Objection.

THE COURT: Overruled.

BY THE COURT:

Q. And you were represented by Harvey Booker at that time, a lawyer? Is that correct?

A. Yes, sir.

Q. From the time you were taken to the hospital, to the time of this hearing, did you ever make a complaint telling the police department, or the District Attorney's Office, or your own lawyer, that this situation occurred as you related it?

MR. HARRIS: Objection.

THE COURT: Overruled.

BY THE COURT:

Q. Did you ever make a complaint to the police department?

A. No, sir.

Q. Did you ever make a complaint to the District Attorney's Office?

A. I made a complaint, I asked the judge—

Q. Did you ever tell the District Attorney's Office?

A. No, sir.

MR. HARRIS: Objection.

THE COURT: Overruled.

BY THE COURT:

Q. And you did not testify at the preliminary hearing, did you?

MR. HARRIS: Objection, Your Honor.

THE COURT: Overruled.

THE WITNESS: They didn't ask me. They didn't ask me.

BY THE COURT:

Q. But you didn't tell them this, did you?

A. I tried. He told me to shut up and to let my lawyer speak.

Q. Who told you?

MR. HARRIS: Objection, Your Honor.

May we have a sidebar, please, sir? With all due respect to the Court—

THE COURT: Overruled.

MR. HARRIS: May we have a sidebar, sir; please?

THE COURT: Before the question is answered?

MR. HARRIS: Yes, sir.

THE COURT: All right. Ladies and gentlemen of the jury, we will take a short recess. Please do not discuss this case with anyone, or allow anyone to discuss this case with you." (NT 319-322)

The trial court contended that the questioning was not directed towards forcing the appellant to incriminate himself, nor was it intended to impute guilt. The questioning was intended solely to reflect on appellant's credibility. Be that as it may, I cannot ignore the distinct possibility that the jury viewed this questioning as indicative of the judge's belief that appellant's testimony on this point was fabricated.

Appellant was under no duty to make a statement, either at the time of his arrest, *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973) ; *Commonwealth v. Dulaney*, 449 Pa. 45, 295 A.2d 328 (1972) ; *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972);

*Commonwealth v. Greco,* 227 Pa. Superior Ct. 19, 323 A.2d 132 (1974), or at the preliminary hearing, *Commonwealth v. Zorambo,* 205 Pa. 109, 54 A. 716 (1903) ; *accord, Commonwealth v. Dravecz,* 424 Pa. 582, 227 A.2d 904 (1967), and no adverse inference may be drawn from his failure to tell his side of the story before trial.

Although the factual situations and the circumstances under which this type of information was elicited in the above cases vary from that in the instant appeal, the rights to be protected remain constant. Even though the judge himself did the questioning and the jury was charged not to draw any adverse inferences, the possibility of prejudice to the appellant was still very real. The umbrella of protection should cover the present situation and this type of questioning should not be permitted.

For this reason, I would reverse the lower court convictions and grant appellant a new trial.

CERCONE and SPAETH, JJ., join in this dissenting opinion.